IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**October 24, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**ZACHARY B.,**
**Petitioner Below, Petitioner**

**v.) No. 25-ICA-90**    (Fam. Ct. Wood Cnty. Case No. FC-54-2019-D-94)

**VERONICA H.,**
**Respondent Below, Respondent**


## MEMORANDUM DECISION

Petitioner Zachary B. ("Father")[1] appeals the Family Court of Wood County's January 29, 2025, order dismissing his petition for modification on res judicata grounds. Respondent Veronica H. ("Mother") responded in support of the family court's decision.[2] The guardian ad litem ("GAL") responded in opposition to the family court's decision. Father filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decision but no substantial question of law. For the reasons set forth below, a memorandum decision vacating the family court's decision and remanding the matter for further proceedings is appropriate under Rule 21 of the Rules of Appellate Procedure.

By way of background, the parties were married on March 10, 2018, and divorced by final order entered on March 9, 2020. They share one child, born in 2018. At the time of divorce, Father was a resident of Washington County, Ohio, and Mother lived in Wood County, West Virginia, where the parties resided during the marriage. According to the final divorce order, Mother was designated as the primary residential parent and the parties shared decision-making authority. By agreement, Father had parenting time on the second, third, and fourth weekends of each month from Friday at noon until Sunday at 6:00 p.m. The parties had two non-consecutive weeks of parenting time during the summer and

---

[1] To protect the confidentiality of the juvenile involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Father is represented by William B. Summers, Esq. Mother is represented by George Y. Chandler II, Esq. The GAL is Erica M. Brannon, Esq.

holidays were shared based on even/odd years. The final order also directed the parties to file a notice of relocation if they decided to relocate.

On August 25, 2023, Father filed a petition for modification of the parenting plan, alleging that the child lacked stability and consistency with Mother, had seven different babysitters in 2023, and had to change their younger sibling's diapers. On September 1, 2023, Father filed a domestic violence petition against Mother, alleging that the child had been smacked with wooden spoons and spatulas, Mother maintained a filthy home and car, and Mother and her significant other were alcoholics. An emergency domestic violence protective order ("DVPO") was entered on September 1, 2023, granting Father temporary custody of the child until September 6, 2023, when the domestic violence hearing was scheduled in family court. Both parties appeared for the domestic violence hearing on September 6, 2023. The family court denied Father's request for a DVPO, finding that he had failed to prove allegations raised in his petition against Mother.

Although the DVPO was denied, the family court entered, sua sponte, a custody order on September 7, 2023, granting temporary custody to Father, with Mother having minimum contact with the minor child every other weekend as agreed upon by the parties. The family court also granted Father permission to enroll the child in pre-kindergarten, ordered that the child was to participate in a forensic interview, and appointed a GAL.

On October 20, 2023, Mother filed a petition for contempt against Father, alleging that he relocated from Washington County, Ohio to Mercer County, West Virginia without filing a notice of relocation, as required in the parties' final divorce order, and that he failed to pay child support.

On or about November 6, 2023, a hearing was held on both parties' petitions. During that hearing, a Child Protective Services ("CPS") worker testified that he interviewed the child's older sibling, who did not confirm any of the allegations made by the child and Father. The CPS worker further testified that the children and residence were always clean, there was always food in the refrigerator, and the older sibling stated that they were never disciplined with a wooden spoon. Further, the children's school officials advised the CPS worker that the children never appeared dirty, bruised, or injured.

On December 13, 2023, Father filed an ex parte motion to implement supervised visitation for the child with Mother and requested that he supervise the visitation. By order entered on December 14, 2023, the family court denied his motion for failing to meet the requirements of an ex parte order.[3]

---

[3] *See* West Virginia Code § 48-5-512 (2001), which provides the requirements of an ex parte order.

On April 2, 2024, the GAL filed an emergency motion to suspend Mother's visits with the child and to require any future visits to be supervised in a third-party facility because the child allegedly reported to Father and to her counselor that Mother, during her unsupervised visits, told the child she needed to tell the truth about what really happened. The GAL asserted that Mother's statements to the child were upsetting because the child *was* telling the truth about what happened. Further, the GAL alleged in her motion that the child informed her counselor that she had been locked in her room and her siblings had to use the bathroom on the floor. The child also allegedly expressed fear to her counselor that Mother would not return her to Father's home. On April 3, 2024, the family court entered an ex parte order suspending Mother's visitation pending a full hearing on the GAL's motion.

On December 5, 2024, Father filed a motion to disqualify the sitting family court judge, arguing that the judge expressed a clear bias against him, downplayed the child's abuse, and clearly favored Mother's attorney. The family court forwarded the motion and a response letter to the Supreme Court of Appeals of West Virginia ("SCAWV"). By administrative order entered on December 12, 2024, the SCAWV denied Father's motion, finding that there was insufficient evidence for disqualification.

After multiple continuances, a final hearing was scheduled on December 13, 2024. At the outset of that hearing, Mother moved the court to dismiss Father's petition for modification on res judicata grounds. Under the threat of the case being dismissed, Father reluctantly agreed to revert to the original parenting plan, which significantly reduced his parenting time. The family court made the following findings of fact and conclusions of law:

- On August 25, 2023, Father filed his original petition for modification, with all grounds relating to alleged abuse and/or neglect of the child.
- On September 6, 2023, the emergency protective order was terminated because Father failed to prove the allegations of domestic violence.
- On November 6, 2023, Father filed additional grounds for his petition for modification, all of which related to the alleged abuse and neglect of the child by Mother.
- Neither of Father's CPS referrals was substantiated by CPS.
- On or about November 6, 2023, the family court advised CPS to conduct further investigation and encouraged the removal of Mother's remaining three children from her home.
- Following CPS's further investigation, no abuse or neglect of the child was found, and such findings were reflected in a letter from CPS dated December 15, 2023.

- On May 7, 2024, the family court sua sponte canceled the scheduled final hearing and referred the entire matter to the circuit court for an overlap proceeding.
- The circuit court ordered a new CPS investigation, and no abuse or neglect was found.
- On July 23, 2024, the circuit court closed the case, citing the four CPS findings of no abuse or neglect. The order contained no remand language.
- Father's petition for modification is barred by the doctrine of *res judicata*.
- Mother's oral motion to dismiss the petition for modification is granted.
- Due to Father's relocation and both parties' changing employment, the child's exchange location is modified, and Father is ordered to pay Mother $541.84 in monthly child support.
- Mother is designated the primary residential parent.
- The parties reached a settlement agreement on all issues, and the court adopts such agreement.
- Mother's petition for contempt is dismissed, and the parties are to revert to their original parenting plan (other than a couple of minor modifications), by agreement, with Father having visitation on the second, third, and fourth weekends of each month.

The final order was entered on January 29, 2025, reflecting the parties' agreement. It is from that order that Father now appeals, arguing that he was forced into the agreement without adequate opportunity to present his case.

For these matters, we apply the following standard of review:

When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

Father raises four assignments of error on appeal. First, he asserts that the family court erred when it dismissed his petition for modification on res judicata grounds, despite statutory and factual evidence of a substantial change in circumstances under West Virginia

4

Code § 48-9-401 (2022).[4] We agree. Res judicata, also known as claim preclusion, is explained as follows:

> Before the prosecution of a lawsuit may be barred on the basis of res judicata, three elements must be satisfied. First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.

Syl. Pt. 4, *Blake v. Charleston Area Med. Ctr., Inc.*, 201 W. Va. 469, 498 S.E.2d 41 (1997). Here, the family court's application of res judicata was erroneous and prevented the court from engaging in the requisite fact finding to determine whether there was a substantial change in circumstances and the child's best interest. The family court erroneously and summarily relied on CPS's findings that the allegations of Mother's abuse and neglect were unsubstantiated and dismissed Father's petition for modification. However, the simple fact that the allegations of abuse were found unsubstantiated by CPS is not dispositive of the family court's consideration of allegations of abuse, such as those raised by Father below. West Virginia Code § 48-9-401 requires the family court, not CPS, to decide if a substantial change has occurred permitting modification. Here, the family court made no such findings, and did not even permit Father or the GAL to present evidence, as the case was dismissed at the outset, even though there had been multiple issues raised by Father since the entry of the parties' final divorce order.

As the SCAWV observed in *Heather M. v. Richard R.*, 242 W. Va. 464, 471, 836 S.E.2d 431, 438 (2019), "[a] court cannot presume to know the facts of a case, the character of a party, or the authority of a potential witness without having heard any evidence." Thus, we find that res judicata is inapplicable to the custody determinations herein, as new facts have emerged throughout the proceedings, which require review by the court. Evidence on Father's petition for modification is essential for the family court to be able to engage with West Virginia Code § 48-9-401 and decide whether a substantial change in circumstances

---

[4] West Virginia Code § 48-9-401 states, in part:

Except as provided in § 48-9-402 or § 48-9-403 of this code, a court shall modify a parenting plan order if it finds, on the basis of facts that were not known or have arisen since the entry of the prior order and were not anticipated in the prior order, that a substantial change has occurred in the circumstances of the child or of one or both parents and a modification is necessary to serve the best interests of the child.

has occurred. Therefore, we vacate the January 29, 2025, final order and remand to the family court with directions to hear the merits of Father's petition for modification.[5]

In Father's third assignment of error, he contends that the family court judge violated his right to due process by failing to disqualify themself in the face of credible allegations of bias, and by conducting proceedings in a matter that reflected prejudgment and partiality. We decline to address this assignment of error as the issue of judicial disqualification is a matter to be exclusively decided by the SCAWV and has already been addressed. *See Schillace v. Matheny*, No. 25-ICA-37, 2025 WL 2491069 (W. Va. Ct. App. August 29, 2025) (memorandum decision). Accordingly, we vacate the January 29, 2025, dismissal order and remand to the family court with directions to conduct a hearing on Father's petition for modification.[6]

Vacated and Remanded with Directions.

**ISSUED:** October 24, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

---

[5] Because we are vacating and remanding with directions for Father's petition for modification to be heard, Father's second and fourth assignments of error are rendered moot and need not be addressed.

[6] We note that under most circumstances, settlement agreements a binding upon the parties. *See Moreland v. Suttmiller*, 183 W. Va. 621, 625, 397 S.E.2d 910, 914 (1990); *Warner v. Warner*, 183 W. Va. 90, 95, 394 S.E.2d 74, 79 (1990); and *Derek G. v. Michele G.*, No. 23-ICA-416, 2024 WL 5003305 (W. Va. Ct. App. December 6, 2024) (memorandum decision).

However, here, at the outset of the final hearing, the family court dismissed the case on res judicata grounds, leaving no opportunity for the parties to develop the record or even reach a meaningful agreement. The Father's objection to the rulings of the family court were specifically preserved in the January 29, 2025, order (at page 6). We remind the court that even if a determination is ultimately made in a future hearing finding Father agreed to revert to the original parenting plan, such agreement is not a waiver of his right to object and appeal the family court's rulings to this Court.